No. 15-2550

_____

**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

_____

Michelle Haywood, on behalf of herself and all others similarly situated,
Plaintiff - Appellant,

v.

Ford Motor Credit Company, LLC,
Defendant - Appellee.

_____

On Appeal from the United States District Court for the District of Maryland
No. 1:14-cv-01671-JFM

_____

**BRIEF OF APPELLANT**

_____

CORY L. ZAJDEL
Z Law, LLC
301 Main Street, Suite #2-D
Reisterstown, MD 21136
clz@zlawmaryland.com
(443) 213-1977

Counsel for Plaintiff-Appellant

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. _____     Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?      YES      NO


2.      Does party/amicus have any parent corporations?                          YES      NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                              YES      NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?      YES     NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES     NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                            YES     NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____                    _____
        (signature)                                          (date)

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF JURISDICTION.......................................................1

STATEMENT OF THE ISSUE ............................................................2

STATEMENT OF THE CASE..............................................................3

STATEMENT OF THE FACTS ...........................................................4

I.    HAYWOOD FINANCED A MOTOR VEHICLE WITH
      FORD CREDIT ...........................................................................4

II.   THE ARBITRATION CLAUSE.................................................4

III.  THE AMERICAN ARBITRATION ASSOCIATION ..................5

IV.   PRIOR LITIGATION BETWEEN HAYWOOD AND
      FORD CREDIT ...........................................................................8

V.    CURRENT LITIGATION BETWEEN HAYWOOD
      AND FORD CREDIT ...............................................................10

VI.   THE UNITED STATES DISTRICT COURT'S DECISION .......11

SUMMARY OF ARGUMENT .............................................................13

ARGUMENT .......................................................................................15

STANDARD OF REVIEW ..................................................................15

I.    FORD CREDIT DEFAULTED IN PROCEEDING
      WITH ARBITRATION................................................................16

      A.    Ford Credit's Significant Delay in Requesting Arbitration.................16

B.     Ford Credit's Significant Trial-Oriented Activities..............................19

      1.     District Court Collection Litigation Activities .........................19

      2.     Circuit Court Collection Litigation Activities .........................20

      3.     Ford Credit's Trial-Oriented Activities Caused Haywood Actual Prejudice ........................................................21

C.     Ford Credit Chose to Litigate the Claim and Was Not Forced to Litigate the Claim Because American Arbitration Association Was Available to Administer an Arbitration Between Ford Credit and Haywood .....................................................25

D.     The Prior Litigation Between Ford Credit and Haywood Involved Similar Facts and Legal Claims ...........................................29

CONCLUSION ...............................................................................................34

STATEMENT REGARDING ORAL ARGUMENT ...........................................35

CERTIFICATE OF COMPLIANCE................................................................36

CERTIFICATE OF FILING AND SERVICE ......................................................37

ii

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*ACCUBID v. Kennedy*, 981 A.2d 727 (Md. App. 2009) .........................................18

*Barbagallo v. Niagara Credit Solutions, Inc.*,
     2012 WL 6478956 (D. Md. Dec. 4, 2012) ......................................17, 29, 30

*Choice Hotels Intern. v. BSR Tropicana Resort*,
     252 F.3d 707 (4th Cir. 2001) .........................................................................1

*Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126 (2d Cir. 1997) ..............................29

*Forrester v. Penn Lyon Homes, Inc.*, 553 F.3d 340 (4th Cir. 2009)............16, 22, 30

*Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*,
     817 F.2d 250 (4th Cir. 1987) ..............................................................22, 23

*Green v. Ford Motor Credit Company*, 828 A.2d 821 (Md. App. 2003)..........32, 33

*Grumhaus v. Comerica Sec., Inc.*, 223 F.3d 648 (7th Cir. 2000) .....................22, 30

*Gulf Guar. Life Inc. Co. v. Conn. Gen. Life Ins. Co.*,
     304 F.3d 476 (5th Cir. 2002) ......................................................................22

*Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173 (4th Cir. 2013) .............................15

*In re Mirant*, 613 F.3d 584 (5th Cir. 2010).............................................................24

*MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244 (4th Cir. 2001) ...................16, 17, 29

*Miller Brewing Co. v. Fort Worth Distributing Co.*,
     781 F.2d 494 (5th Cir. 1986) ......................................................................34

*Moore v. Nissan Motor Acceptance Corp.*, 831 A.2d 12 (Md. 2003) .........31, 32, 33

*Nicholas v. KBR, Inc.*, 565 F.3d 904 (5th Cir. 2009).............................................22

iii

*Rota-McLarty v. Ford Credit Consumer USA, Inc.,*
   700 F.3d 690 (4th Cir. 2012) .........................................................................16

*Rowland v. Harrison*, 577 A.2d 51 (Md. 1990)......................................................32

*Santoro v. Accenture Federal Services, LLC*, 748 F.3d 217 (4th Cir. 2014) ..........15

*Singer v. Steven Kokes, Inc.*, 384 A.2d 463 (Md. App. 1978)................................32

*Smith v. Gilchrist*, 749 F.3d 302 (4th Cir. 2014) ....................................................15

*Southeastern Stud & Components, Inc. v. American Eagle*
   *Design Build Studios, LLC*, 588 F.3d 963 (8th Cir. 2009) ............................17

*Suntrust Bank v. Goldman*, 29 A.3d 724 (Md. App. 2011) .....................................18

*United Book v. Md. Composition*, 786 A.2d 1 (Md. App. 2001)............................18

*United States v. Brown*, 232 F.3d 399 (4th Cir. 2000) ...........................................15

*United States v. Layton*, 564 F.3d 330 (4th Cir. 2009)............................................15

*Wheeling Hosp. v. Health Plan of Upper Ohio Valley*,
   683 F.3d 577 (4th Cir. 2012) .........................................................................24

**STATUTES**

9 U.S.C. § 3 ....................................................................................2, 13, 16, 35

28 U.S.C. § 1291 ................................................................................................1

28 U.S.C. § 1332 ................................................................................................1

MD. CODE ANN., COMM. LAW § 12-1001 .................................................................1

MD. CODE ANN., COMM. LAW § 12-1020 .........................................................10, 24

Md. Code Ann., Comm. Law § 12-1021 ....................................................9, 10, 21

Md. Code Ann., Comm. Law § 14-201 ..........................................................1, 10

**RULES**

Fed. R. App. P. 4 ..............................................................................................1

Fed. R. App. P. 34 ..........................................................................................35

**OTHER AUTHORITY**

Restatement (Second) of Judgments § 22 (1982) .....................................32

## STATEMENT OF JURISDICTION

Appellant Michelle Haywood ("Haywood" or "Appellant"), filed a Class Action Complaint ("Complaint") in the Circuit Court of Maryland for Baltimore City against Appellee Ford Motor Credit Company, LLC ("Ford Credit" or "Appellee") alleging violations of *Maryland's Credit Grantors Closed End Credit Provisions* ("CLEC"), MD. CODE ANN., COMM. LAW §§ 12-1001 *et seq.*, *Maryland Consumer Debt Collection Act* ("MCDCA"), MD. CODE ANN., COMM. LAW §§ 14-201 *et seq.* and breach of contract. Joint Appendix 7-19 (hereinafter "JA"). Ford Credit removed the case to the United States District Court ("USDC") for the District of Maryland alleging jurisdiction under 28 U.S.C. 1332(d).

The District Court granted Ford Credit's Motion to Compel Arbitration and Stay Proceedings ("Motion to Compel Arbitration") by entering a Memorandum Opinion and Order on September 30, 2015. JA 177-79. Judge Motz originally stayed the case pending arbitration, but later entered a final judgment dismissing the case in favor of an immediate appeal on December 3, 2015. JA 183-84. Appellant filed a timely Notice of Appeal on December 11, 2015. JA 185; FED. R. APP. P. 4(a)(4). This Court has jurisdiction pursuant to 28 U.S.C. § 1291. *Choice Hotels Intern. v. BSR Tropicana Resort*, 252 F.3d 707, 709-10 (4th Cir. 2001) (recognizing the USDC's authority to dismiss rather than enter a stay pending arbitration "when all of the issues presented in a lawsuit are arbitrable").

1

## STATMENT OF THE ISSUE

Whether Ford Credit defaulted on its right to seek relief under a retail installment sales contract containing an Arbitration Clause pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3 by waiting until after two judgments were entered - including a trial court judgment in its favor and an adverse appellate court judgment after fully participating in a trial on the merits - prior to requesting arbitration under the same retail installment sales contract for the same claim? [Yes.]

## STATEMENT OF THE CASE

This consumer class action was filed by Appellant against Ford Credit alleging multiple violations of CLEC, MCDCA and breach of contract for repossessing and selling Appellant's motor vehicle without providing her with statutorily required adequate notice. Ford Credit alleged and argued that the case between the parties was subject to a binding written and enforceable Arbitration Clause that Haywood entered into with Ford Credit in the Retail Installment Sales Contract ("RISC"). Haywood argued that Ford Credit defaulted on its right to arbitrate the claim by failing to request arbitration on the same claim in separately filed litigation between the same parties under the same RISC that had previously resulted in a trial court judgment in Ford Credit's favor and an appellate court judgment in favor of Appellant. In a two page opinion the USDC of Maryland ruled that Ford Credit did not default on its right to enforce the Arbitration Clause because the arbitration forum specified in the Arbitration Clause would not have accepted the arbitration of the claim in the prior litigation initiated by Ford Credit.

The issue on appeal relates to whether Ford Credit could have arbitrated the same claim it previously litigated against Appellant that was later brought to judgment and whether the failure to arbitrate or at least even attempt to arbitrate the same claim eliminates Ford Credit's right to arbitrate this subsequent litigation. Appellant appeals the District Court's decision dismissing the case.

3

## STATEMENT OF THE FACTS

## I. HAYWOOD FINANCED A MOTOR VEHICLE WITH FORD CREDIT

Appellant is a Maryland consumer who purchased and financed a motor vehicle in Maryland on January 28, 2006.  JA 10 (¶¶ 19-20).  Appellant entered into a RISC in order to finance the purchase of the motor vehicle that was assigned to Ford Credit.  JA 10 (¶ 25) and JA 28.  The RISC specifically elected CLEC as the controlling law.  JA 10 (¶ 21) and JA 28.  The RISC included an Arbitration Clause.  JA 30.

## II. THE ARBITRATION CLAUSE

The Arbitration Clause included in the RISC explained that "[a]rbitration is a method of resolving any claim, dispute, or controversy (collectively, a "Claim") without filing a lawsuit in court."  JA 30.  The Arbitration Clause allowed either party to demand arbitration even after the filing of a lawsuit.  JA 30 ("[e]ither you or Creditor ("us" or "we") (each, a "Party") may choose at any time, *including after a lawsuit is filed*, to have any Claim related to this contract decided by arbitration") (emphasis added).   The Arbitration Clause broadly identified the types of "Claim[s] related this [RISC]" that either party could arbitrate as "Claims in contract, . . . Claims between you and us, [and] Claims arising out of or relating to . . . this contract[.]"  JA 30.  In order to initiate arbitration, "[e]ither party must contact [either American Arbitration Association or National Arbitration Forum]

4

and the other Party[.]"  JA 30.  Unlike subsequent RISC's used by Ford Credit that contained anti-merger clauses, Appellant's RISC does not contain any anti-merger clause.  *Compare* JA 30 with JA 43 and 45 (stating that "[t]his clause shall survive any termination, payoff or transfer of this contract"); JA at 50 (stating that "[t]his Arbitration Clause shall survive any termination, payoff or transfer of this contract").

## III.    THE AMERICAN ARBITRATION ASSOCIATION

The American Arbitration Association ("AAA") is a non-profit corporation providing a forum for dispute resolution.  USDC Docket #43 at 7.  Due to a lack of fairness and adequate arbitration processes in consumer arbitrations, AAA "announced [a] moratorium on debt collection arbitrations[.]"  JA 184.  The debt collection arbitration moratorium began in 2009 and remains in place to date.  JA 185 (¶ 3).  The debt collection arbitration moratorium applied to and restricted AAA from administering any arbitrations related to "consumer debt collection programs or bulk filings[.]"  JA 184.  In addition, the debt collection arbitration moratorium applied to and restricted AAA from administering any arbitrations filed by a business entity where the "case involves a credit card bill, a telecom bill or a consumer finance matter" and "the consumer has not agreed to arbitrate at the time of the dispute[.]"  JA 184.  AAA, however, specifically noted that it "will comply with any court orders arising from litigation involving matters covered by

5

the moratorium" and will administer any arbitrations initiated by the consumer.  JA 184.

AAA publishes a quarterly report required by Maryland law in an excel spreadsheet that "summarized case information concerning consumer debt collection cases for the period of time covered by the report."  JA 186-87 (¶ 12). The quarterly report includes each debt collection case filed with the AAA and identifies the non-consumer party by name, states whether the non-consumer party initiated the arbitration and identifies whether AAA determined that the arbitration falls into its debt collection moratorium.  JA 186-87 (¶ 12).  In fact, AAA self-identified at least four hundred ninety three (493) arbitrations that met the definition of the debt collection moratorium in the excel spreadsheet.  JA 142 (¶ 6) and JA 144-76.  Four hundred eighty one (481) of the four hundred ninety three (493) consumer arbitrations identified as meeting the debt collection moratorium definition were filed by a non-consumer against a consumer and was administered by AAA.  JA 142 (¶ 7) and 144-76.  The excel spreadsheet identifies thirty four (34) instances in which Ford Credit or its parent Ford Motor Company was a party to a consumer arbitration.  JA 142 (¶ 8) and 177-79.  The excel spreadsheet also identifies at least ten (10) consumer arbitrations in which Ford Credit or Ford Motor Company sought collection of an amount from a consumer.  JA 142 (¶ 9) and 177-79.  In addition, at least three (3) consumer arbitrations listed on the excel

6

spreadsheet are identified as arbitrations in which Ford Credit or Ford Motor Company was the filing party.  JA 142 (¶ 10) and 177-79.

In the USDC, AAA originally took the position in its briefing papers without the support of any evidence that "a deficiency case against Ms. Haywood initiated by [Ford Credit] would not have been accepted and administered by the AAA." USDC Docket #43 at 5 and 9 (stating that "AAA's [debt collection] moratorium is genuine and in effect, and it would have applied to exclude a deficiency case if one had been initiated by [Ford Credit]").  After numerous subpoenas were issued, AAA filed a Declaration under oath acknowledging that the debt collection arbitration moratorium would not have restricted AAA from administering an arbitration between Ford Credit and Haywood regarding the original deficiency collection action if Haywood filed the arbitration, if Haywood consented to arbitration after Ford Credit filed the arbitration or if a court ordered arbitration between Ford Credit and Haywood:

> Based upon my review of the papers, if the Defendant Ford Motor Credit Company had initiated an arbitration case against Ms. Haywood, seeking a deficiency judgment under a consumer contract while the AAA's moratorium on consumer debt collection cases had been in effect, the AAA would not have accepted the case and would have not administered the case, unless:
>
> > a) Ms. Haywood consented to arbitration contemporaneously with Ford Motor Credit Company's filing of the demand for arbitration[,] or

> b) A Court ordered the parties to arbitration[.]
>
> If either of the exceptions applied, then the AAA would have accepted and administered the case.

JA 186 (¶¶ 8-10).

## IV.  PRIOR LITIGATION BETWEEN HAYWOOD AND FORD CREDIT

After Haywood defaulted on her monthly payment obligations under the RISC, Ford Credit repossessed the motor vehicle.  JA 11 (¶ 30).  Ford Credit sold the motor vehicle at auction and later mailed a post-sale notice to Haywood stating that a deficiency balance remained on the RISC after the sale of the motor vehicle at auction in the amount of three thousand six hundred ninety three dollars and eighty nine cents ($3,693.89).  JA 12 (¶ 46) and 64.

On May 17, 2013, Ford Credit filed a lawsuit in the District Court of Maryland for Baltimore City (Case No. 010100118742013) asserting that Haywood breached her RISC and that a $3,493.89 balance remained due and owing under the RISC.  JA 13 (¶ 50) and JA 54.  In its Complaint, Ford Credit asserted that the "vehicle was repossessed and sold in accordance with the provisions of the agreement."  JA 54.  Ford Credit filed an affidavit along with documentary proof in support of the District Court Complaint to prove that it was entitled to a deficiency judgment in the amount of $3,493.89.  JA 13 (¶ 51) and 56-65.  After service of the District Court Complaint and supporting evidence and

relying on the District Court Complaint and supporting evidence, the District Court of Maryland for Baltimore City entered a judgment in favor of Ford Credit in the amount of $3,493.89, plus $49.39 interest, $68 costs and $524.08 attorney's fees. JA 13 (¶ 52). Haywood filed a Notice of Appeal contesting the judgment on August 20, 2013. JA 13 (¶ 53).

On October 9, 2013, the Circuit Court of Maryland for Baltimore City held a *de novo* appeal on the merits of the case. JA 13 (¶ 54). During the appellate trial, Ford Credit called a corporate representative to testify. In addition, Ford Credit's corporate representative authenticated documents related to Haywood's account with Ford Credit - including her RISC and the notice provided to Haywood related to the repossession, storage and sale of her motor vehicle. JA 13 (¶¶ 55-6); JA 56-65. Ford Credit also cross-examined Haywood under oath. JA 14 (¶ 57). The testimony and evidence provided to the Circuit Court of Maryland for Baltimore City was for the purpose of proving whether the "vehicle was repossessed and sold in accordance with the provisions of the agreement." JA 54 and 74-139 (transcript of Circuit Court *de novo* trial).

At the conclusion of the *de novo* trial, Circuit Court Judge Pamela White heard argument from counsel for Ford Credit and counsel for Haywood. The argument centered on whether Ford Credit violated Haywood's rights under CLEC § 12-1021 by failing to provide adequate post-sale notice of the repossession. In

addition, both parties argued their respective positions on whether Ford Credit satisfied the requirements of CLEC § 12-1020 by providing Haywood with a corrective post-sale notice almost a year after delivering the initial post-sale notice. JA 74-139.

On October 16, 2013, Circuit Court Judge Pamela White issued a Memorandum Opinion and Order vacating the judgment entered by the District Court of Maryland for Baltimore City and entered judgment in favor of Haywood. JA 14 (¶ 58) and 67-73. Specifically, Circuit Court Judge Pamela White held that Ford Credit violated CLEC § 12-1021(j)(2) by failing to provide accurate and adequate post-sale notice to Haywood as required by the RISC. JA 14 (¶ 59) and JA 67-73. At no time did Ford Credit contact American Arbitration Association or Haywood in order to initiate arbitration on the collection action. JA 186 (¶ 6). At no time did Ford Credit request that the District Court of Maryland for Baltimore City or the Circuit Court of Maryland for Baltimore City compel Haywood to arbitrate the claim.

## V.    CURRENT LITIGATION BETWEEN HAYWOOD AND FORD CREDIT

On March 31, 2014, Haywood filed a putative class action in the Circuit Court of Maryland for Baltimore City alleging that Ford Credit violated her rights under CLEC, MCDCA and breached her RISC. JA 16-8 (¶¶ 77-93). All of the material factual allegations and causes of action alleged in the Complaint relate to

Ford Credit's failure to provide adequate and accurate post-repossession notices to Haywood in accordance with the agreement. Ford Credit filed a Motion to Compel Arbitration after removing the litigation to the USDC of Maryland. JA 20. The central issue presented by the Motion to Compel Arbitration was whether Ford Credit defaulted on its right to arbitrate the claim between Haywood and Ford Credit by failing to request arbitration until after a judgment, an appeal, a trial, testimony and arguments of both parties and a second judgment on the same claim was entered.

## VI.    THE UNITED STATES DISTRICT COURT'S DECISION

The USDC of Maryland thought it important to determine whether AAA would have administered an arbitration between Ford Credit and Haywood with respect to the collection action originally filed in the District Court of Maryland for Baltimore City in order to determine whether Ford Credit defaulted on its rights. JA 140. Ford Credit contended that it "could not seek arbitration of its collection claim against Ms. Haywood, because [the AAA] would [not] accept a creditor-filed deficiency action by the time of her default[.]" USDC Docket #29 at 5-6. Ford Credit claimed, therefore, that it "plainly had no practical alternative but to file the deficiency collection action in court[.]" USDC Docket #32 at 4. To the contrary, Haywood argued that AAA would have accepted the deficiency action initiated by Ford Credit had Haywood consented to the arbitration or if Ford Credit obtained a

11

court order compelling the parties to proceed in arbitration under the terms of the

Arbitration Clause.  USDC Docket #35 at 5-6.  More specifically, Haywood stated

that:

> [AAA] stood ready, willing and able to administer any
> arbitration referred to it by order of court.  Had Ford
> Credit filed a petition to compel arbitration in Maryland
> state court and had the state court granted the petition to
> compel, [AAA] would have administered the arbitration
> of the deficiency collection dispute . . . .

USDC Docket #35 at 5-6.  Prior to issuing a formal memorandum opinion, the

USDC of Maryland took the position that if AAA would not have administered an

arbitration between Ford Credit and Haywood that compelling arbitration was

appropriate.  JA 140.  The USDC of Maryland allowed some limited discovery on

AAA to determine whether AAA would have administered an arbitration to collect

a debt filed by Ford Credit.  JA 140.  The USDC of Maryland held that Ford Credit

"did not waive its right to arbitration by pursuing an action for deficiency judgment

in the Maryland state courts" because the AAA would not have "accepted a claim

for arbitration filed by [Ford Credit] based on the deficiency."  JA 194-95.

Based on this reason, Judge J. Frederick Motz entered an Order granting

Ford Credit's Motion to Compel Arbitration.  JA at 196.  Subsequently, Judge

Motz dismissed the case as requested by Haywood.    JA 200-01).

## SUMMARY OF ARGUMENT

The question before the Court on appeal relates to whether Ford Credit "is in default in proceeding with [] arbitration" due to its delay in requesting arbitration and its substantial trial-oriented activities related to the claim it seeks to arbitrate. FAA § 3.  Ford Credit undertook the following trial-oriented activities in the collection litigation filed against Haywood under the same RISC for the same cause of action: 1) filed the collection lawsuit under affidavit; 2) submitted sworn testimony and documentary proof of its claim; 3) was awarded a judgment based on the sworn affidavit testimony and documentary proof; 4) received a notice of appeal; 5) fully participated in a *de novo* appellate trial; 6) solicited testimony from a corporate representative; 7) cross-examined Haywood; 8) argued the merits of the claim to the court; and 9) a second judgment was entered on the same claim. Ford Credit asserted that even though two judgments were entered with respect to its collection litigation against Haywood with respect to the same claim - including a trial court judgment in its favor and an adverse appellate court judgment after fully participating in a trial on the merits - it had not defaulted in proceeding with arbitration because the arbitration administrator specifically mentioned in the Arbitration Agreement "would [not] accept a creditor-filed deficiency action by the time of [Haywood's] default[.]"  USDC Docket #29 at 5-6.  Ford Credit claimed, therefore, that it "plainly had no practical alternative but to file the deficiency

13

collection action in court[.]"  USDC Docket #32 at 4.  To the contrary, however, AAA swore under oath that it would have administered an arbitration between Ford Credit and Haywood regarding the original deficiency collection litigation if Haywood consented to arbitration after Ford Credit filed the arbitration or if a court ordered arbitration between Ford Credit and Haywood.  JA 186 (¶ 8).  It is without question that AAA was available to administer an arbitration between Ford Credit and Haywood on the same claim under the same RISC but Ford Credit chose instead to litigate the claim through two judgments, an appeal and trial on the merits.  Accordingly, Ford Credit defaulted on its right to proceed with arbitration and the USDC of Maryland erred when it entered an order compelling Haywood to resolve any disputes through binding arbitration under the FAA.

## ARGUMENT

**STANDARD OF REVIEW**

This Court reviews "*de novo* [any] district court's judgment compelling arbitration, as well as any questions of state contract law concerning the validity of the Arbitration Clause." *Santoro v. Accenture Federal Services, LLC*, 748 F.3d 217 (4th Cir. 2014) (*citing Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 178 (4th Cir. 2013)). This Court reviews *de novo* a district court's determinations related to questions of law and legal conclusions. *United States v. Brown*, 232 F.3d 399, 403 (4th Cir. 2000); *United States v. Layton*, 564 F.3d 330, 334 (4th Cir. 2009). This Court reviews a grant of summary judgment "viewing all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Smith v. Gilchrist*, 749 F.3d 302, 307 (4th Cir. 2014).

## I.   FORD   CREDIT   DEFAULTED   IN   PROCEEDING   WITH   ARBITRATION

A party to an arbitration agreement loses its right to invoke the FAA § 3 if it "is in default in proceeding with such arbitration."  In determining whether a party has defaulted on its right to compel arbitration under the FAA a court must ask whether or not the party insisting on arbitration has "so substantially utiliz[ed] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing [arbitration]."  *Forrester v. Penn Lyon Homes, Inc.*, 553 F.3d 340, 343 (4th Cir. 2009).  The Court must determine whether "the opposing party has suffered actual prejudice."  *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 702 (4th Cir. 2012) (*citing MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001)).  Actual prejudice can be either procedural or substantive.  A determination of actual prejudice results from a review of "the amount of the delay" in requesting arbitration and the amount of "the moving party's trial-oriented activity."  *Id.* at 702.

A.   Ford Credit's Significant Delay in Requesting Arbitration

Ford Credit delayed in demanding arbitration with Haywood until more than one year after it first began litigating the arbitrable claim under the RISC against Haywood.  JA 13 (¶ 50) (identifying May 17, 2013 as the date Ford Credit began litigating the claim against Haywood) and JA 20 (identifying June 2, 2014 as the

16

date Ford Credit first raised the applicability of an arbitration clause related to the RISC).[1]

A party's delay in moving for arbitration is based on when the moving party first began litigating an arbitrable claim against the non-moving party. *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 250 (4th Cir. 2001) (determining that the delay in requesting arbitration was six months from the date of all litigation between the two parties); *Barbagallo v. Niagara Credit Solutions, Inc.*, 2012 WL 6478956 (D. Md. Dec. 4, 2012) (stating that the delay is measured "from the beginning of litigation to the time that the moving party asserts its right to arbitrate"). A delay of more than one year is sufficient to establish actual prejudice to Haywood. *Southeastern Stud & Components, Inc. v. American Eagle Design Build Studios, LLC*, 588 F.3d 963 (8th Cir. 2009) (stating that delays approaching or exceeding one year especially when other factors are present support a default under FAA and holding that 13 month delay was a default under the FAA).

---

[1] Ford Credit stated its preference for litigating in Court rather than demanding arbitration on four separate occasions between the date Ford Credit filed its collection litigation against Haywood in the District Court of Maryland for Baltimore City and the time that Ford Credit demanded arbitration of the pending litigation. During that time, Ford Credit chose to litigate the collection litigation in the District Court of Maryland for Baltimore City, chose to litigate the collection litigation in the Circuit Court of Maryland for Baltimore City, removed the Complaint filed by Haywood against Ford Credit to the United States District Court for the District of Maryland and opposed a motion to remand arguing that the appropriate forum for this litigation is the United States District Court for the District of Maryland.

It is not just the time period during which Ford Credit failed to demand arbitration that is important to this analysis, but also what happened during this time delay that is crucial. During the time in which Ford Credit failed to demand arbitration on an arbitrable claim under the RISC, two judgments were entered by the Maryland state courts - including a trial court judgment in Ford Credit's favor and an adverse appellate court judgment after fully participating in a trial on the merits. Ford Credit chose not to appeal the adverse appellate court judgment and that judgment is now a final judgment.

Maryland law is clear that a judgment entered under a RISC merges the RISC into the judgment. *Suntrust Bank v. Goldman*, 29 A.3d 724 (Md. App. 2011) ("a simple contract is merged in a judgment or decree rendered upon it, and . . . all its powers to sustain rights and enforce liabilities terminate[] in the judgement [sic] or decree."); *ACCUBID v. Kennedy*, 981 A.2d 727, 741, 188 A.2d 214 (Md. App. 2009) ("We decline to announce a holding in this case that would be at odds with . . . the well-settled principle that, absent express contractual language stating otherwise, the claims set forth in a contract merge at the time of judgment"); *United Book v. Md. Composition*, 786 A.2d 1 (Md. App. 2001) (holding that "a claim merges into a judgment obtained with respect to that claim").

One notable exception to the merger rule is when the parties specifically include a non-merger clause in the RISC with respect to certain provisions in the

RISC. For this exception to the merger doctrine to apply, "the parties [must] clearly state their intent in the contract that the [] provision shall not merge into the judgment." *Suntrust Bank*, 29 A.3d 724. Ford Credit and Haywood did not clearly agree to an anti-merger clause in the RISC with respect to either parties rights under the RISC to compel arbitration.

Therefore, under Maryland law, when a judgment is entered on a RISC claim that contains the arbitration agreement during the delay in time to demand arbitration, the right to request arbitration under the RISC no longer exists. Accordingly, Ford Credit's delay in time of more than one year to demand arbitration has caused Haywood actual prejudice not only because the actual delay was itself significant, but also because Ford Credit's actions during that delay in litigating the arbitrable claim to a final judgment removed its ability to demand arbitration. The Court should reverse and remand on the delay in time factor.

B.    Ford Credit's Significant Trial-Oriented Activities

Ford Credit did not just undertake "trial-oriented activities" prior to moving to compel arbitration, Ford Credit waited until an adversary judgment was entered after fully participated in a trial on the merits to request arbitration. A brief summary of the "trial-oriented activities" Ford Credit undertook prior to moving this Court to compel arbitration is needed to more fully understand the legal implications on default and actual prejudice.

19

### 1.    *District Court Collection Litigation Activities*

Ford Credit initiated a lawsuit under Haywood's RISC in the District Court of Maryland for Baltimore City on May 17, 2013. JA 13 (¶ 50) and 54. In support of its collection litigation under the RISC, Ford Credit submitted testimony and evidence to prove that it complied with the repossession notice requirements contained in CLEC so that it could collect the alleged $3,493.89 deficiency balance remaining due on the account. JA 13 (¶ 51) and 56-65. Ford Credit was granted a judgment in the amount of $3,493.89, plus $49.39 interest, $68 costs and $524.08 attorney's fees due to its testimony and evidence that the "vehicle was repossessed and sold in accordance with the provisions of the agreement[.]" JA 13 (¶ 52) and 54.

### 2.    *Circuit Court Collection Litigation Activities*

Haywood filed a Notice of Appeal on August 20, 2013 contesting the judgment entered in favor of Ford Credit. JA 13 (¶ 53). On October 9, 2013, Ford Credit participated in a *de novo* appellate trial in the Circuit Court of Maryland for Baltimore City. JA 13 (¶ 54) and 74-139. During the appellate trial, Ford Credit called a corporate representative to testify regarding Haywood's RISC, account payment history and efforts Ford Credit undertook to repossess, sell and notify Haywood prior to and after the repossession sale in accordance with CLEC. Ford Credit's corporate representative authenticated Haywood's RISC and the notices

provided to Haywood related to the repossession, storage and sale of her motor vehicle.  JA 13 (¶¶ 55-6) and 56-65.

Ford Credit cross-examined Haywood under oath and had the opportunity to discover information related to all aspects of the RISC, her account with Ford Credit and the pre-sale and post-sale repossession notices she received from Ford Credit.  JA 14 (¶ 57) and 74-139.  All of the testimony and evidence provided by Ford Credit to the Court was for the purpose of proving that the "vehicle was repossessed and sold in accordance with the provisions of the agreement."  JA 54. Following the appellate trial, Ford Credit argued its positions related to whether Ford Credit provided proper and adequate notice of the repossession sale in accordance with the RISC and the strict requirements of CLEC.  JA 74-139.

On October 16, 2013, Circuit Court Judge Pamela White issued a Memorandum Opinion and Order vacating the judgment entered by the District Court of Maryland for Baltimore City and entered judgment in favor of Haywood. JA 14 (¶ 58) and 67-73.  Specifically, Circuit Court Judge Pamela White held that Ford Credit violated CLEC § 12-1021(j)(2) by failing to provide accurate and adequate post-sale notice to Haywood as required by the RISC.  JA 14 (¶ 59) and 67-73.

21

3.      *Ford Credit's Trial-Oriented Activities Caused Haywood Actual Prejudice*

The trial-oriented activities undertaken by Ford Credit as described above without ever demanding arbitration under the RISC require that this Court determine that Ford Credit is in default of its rights under the FAA. Ford Credit's trial-oriented activities, which included entry of a first judgment under the RISC and an actual trial resulting in a final judgment under the RISC determining the rights of the parties in this litigation caused Haywood actual prejudice.

A party substantially invokes the judicial process by initially pursuing litigation of claims then reversing course and attempting to arbitrate those claims. *Nicholas v. KBR, Inc.*, 565 F.3d 904 (5th Cir. 2009); *Gulf Guar. Life Inc. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 484 (5th Cir. 2002); *Grumhaus v. Comerica Sec., Inc.*, 223 F.3d 648, 650 (7th Cir. 2000) (internal citations omitted) ("stating that a court must presume that a party implicitly waived its right to arbitrate when it chooses a judicial forum for the resolution of a dispute. Once a party selects a forum, the courts have an interest in enforcing that choice and not allowing parties to change course midstream."). This Court has held that waiting until the eve of trial before moving to compel arbitration causes the non-moving party to suffer actual prejudice. *Forrester v. Penn Lyon Homes*, 553 F.3d 340 (4th Cir. 2009). In addition, this Court has held that the filing of several dispositive motions and the passing of several trial dates and the opposing party's trial

22

preparation causes actual prejudice. *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.2d 250, 252 (4th Cir. 1987). Surely then, waiting until after a judgment, waiting until after an appeal, waiting until after a trial and waiting until after a second final judgment is entered on the claims at issue is too late and causes actual prejudice.

This Court has also held that participating in discovery in a court action that is not otherwise available to a party in arbitration and preparing for trial can result in a finding of actual prejudice. *Fraser*, 817 F.2d at 252. The Arbitration Clause in Haywood's RISC specifically states that "[i]f either you or we choose to arbitrate a Claim, then you and we agree to waive the following rights: . . . BROAD RIGHTS TO DISCOVERY AS ARE AVAILABLE IN A LAWSUIT[.]" JA 30. The purported arbitration agreement requires that any arbitration proceed before the AAA.[2] The AAA does not allow for depositions. Rule 22 (Exchange of Information between the Parties) (AAA rules available at https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTAGE2021425&rev ision=latestreleased) (last visited on October 20, 2014). In the first action, Ford Credit was able to cross examine Haywood under oath in Court regarding all the

_____

[2] The National Arbitration Forum voluntarily ceased administering arbitrating consumer disputes as part of a settlement agreement entered into with the Minnesota Attorney General due to its strong ties to the credit industry and joint ownership with a debt collection law firm. http://www.adrforum.com/newsroom.aspx?itemID=1528 (last visited Oct. 30, 2014).

facts applicable to the related claims. JA 14 (¶ 57) and 133-14. This cross examination under oath from the collection litigation far exceeds the benefits of any deposition that would have been unavailable through an AAA arbitration hearing. In addition, Ford Credit learned Haywood's trial strategies and arguments related to its CLEC violations and to Ford Credit's defense under CLEC § 12-1020 which it could not have learned through discovery in arbitration.

In addition, this Court has repeatedly stated that the filing of dispositive motions and waiting for the Court to rule on the dispositive motions results in actual prejudice to the other party. This is the case because the filing of dispositive motions causes the non-moving party to reveal its litigation strategy by giving the moving party "'a full preview of [the non-movant's] evidence and litigation strategy, particularly its arguments and evidence in response to the [movant's] affirmative defenses.'" *Wheeling Hosp. v. Health Plan of Upper Ohio Valley*, 683 F.3d 577, 589 (4th Cir. 2012) (quoting *In re Mirant*, 613 F.3d 584, 592 (5th Cir. 2010)). In this litigation, Ford Credit did not simply file a dispositive motion and wait for the court's ruling but rather took an identical claim to judgment on two separate occasions and through trial. At the trial, Ford Credit was able to uncover all of Haywood's evidence and arguments related to the claims asserted in the pending litigation and evidence and legal arguments related to Ford Credit's affirmative defense in the pending litigation. If the rulings on dispositive motions

24

can be the basis for actual prejudice, than surely requesting arbitration after two judgments and a trial amounts to actual prejudice - especially when the moving party uncovers the non-moving party's trial strategies.

C.   Ford Credit Chose to Litigate the Claim and Was Not Forced to Litigate the Claim Because AAA Was Available to Administer an Arbitration Between Ford Credit and Haywood

Ford Credit's main contention in the USDC of Maryland was that it could not have defaulted on its rights to demand arbitration because AAA was not available to administer an arbitration between Ford Credit and Haywood.  More specifically, Ford Credit asserted that it "could not seek arbitration of its collection claim against Ms. Haywood, because [the AAA] would [not] accept a creditor-filed deficiency action by the time of her default[.]"  USDC Docket #29 at 5-6.  Ford Credit claimed, therefore, that it "plainly had no practical alternative but to file the deficiency collection action in court[.]"  USDC Docket #32 at 4.  Ford Credit's contention was completely rebutted by AAA's corporate representative.

AAA stated under oath that although a debt collection arbitration moratorium was in place at the time Ford Credit filed the deficiency collection litigation against Haywood, AAA still was available to administer an arbitration between Haywood and Ford Credit if Haywood consented to arbitration after Ford Credit filed the arbitration or if a court ordered arbitration between Ford Credit and Haywood:

25

> Based upon my review of the papers, if the Defendant Ford Motor Credit Company had initiated an arbitration case against Ms. Haywood, seeking a deficiency judgment under a consumer contract while the AAA's moratorium on consumer debt collection cases had been in effect, the AAA would not have accepted the case and would have not administered the case, unless:
>
> > a) Ms. Haywood consented to arbitration contemporaneously with Ford Motor Credit Company's filing of the demand for arbitration[,] or
> >
> > b) A Court ordered the parties to arbitration[.]
>
> If either of the exceptions applied, then the AAA would have accepted and administered the case.

JA 186 (¶¶ 8-10) and 184 (stating that it "will comply with any court orders arising from litigation involving matters covered by the moratorium").[3]

Accordingly, if Ford Credit had obtained consent from Haywood to arbitrate the claim AAA would have administered the deficiency collection litigation. Similarly, if Ford Credit filed a petition to compel arbitration and the Court granted the petition to compel, AAA would have administered the arbitration of the

---

[3] Strangely, AAA originally took the position that "a deficiency case against Ms. Haywood initiated by [Ford Credit] would not have been accepted and administered by the AAA." USDC Docket #43 at 5 and 9 (stating that "AAA's [debt collection] moratorium is genuine and in effect, and it would have applied to exclude a deficiency case if one had been initiated by [Ford Credit]"). AAA later changed its position and acknowledged that it would have administered an arbitration between Ford Credit and Haywood when forced to testify under oath. JA 186 (¶¶ 8-10).

deficiency collection dispute.[4]  But at no time did Ford Credit contact AAA or Haywood in order to initiate arbitration on the collection action.  JA 186 (¶ 6).  Nor did Ford Credit ever request that the District Court of Maryland for Baltimore City or the Circuit Court of Maryland for Baltimore City compel Haywood to arbitrate the claim even though the Arbitration Clause clearly provided Ford Credit the right to compel arbitration after filing and pursuing litigation against Haywood.  JA 30 ("[e]ither you or Creditor ("us" or "we") (each, a "Party") may choose at any time, *including after a lawsuit is filed*, to have any Claim related to this contract decided by arbitration") (emphasis added).

This is the case even though Ford Credit was not hesitant to request court orders compelling arbitration with AAA in other cases in which it sought deficient amounts originally filed in court.  In one case, Ford Credit filed a deficiency collection action against Judy Pank and Neil Pank in Tennessee seeking to recover greater than twenty five thousand dollars ($25,000.00).  After an appearance of

---

[4] A quarterly report published by AAA and submitted as evidence in the USDC of Maryland identifies four hundred ninety three (493) arbitrations that met the definition of the debt collection moratorium that AAA would not have administered unless the consumer consented or a court ordered the parties to arbitration.  JA 142 (¶ 6), 144-76 and 186-87 (¶ 12).  Four hundred eighty one (481) of the four hundred ninety three (493) consumer arbitrations identified as meeting the debt collection moratorium definition were filed by a non-consumer against a consumer and was administered by AAA.  JA at 142 (¶ 7) and 144-76.  Ford Credit used this process of obtaining court orders compelling arbitration to collect debts from consumers through AAA arbitration.  JA at 142 (¶¶ 8-10) and 177-79.

counsel and a request for a jury trial, Ford Credit filed a motion with the Circuit Court for Loudon County, Tennessee requesting that the Court compel the deficiency action filed by Ford Credit to proceed in arbitration rather than in court. Over the consumer's objections, the court entered an order compelling the parties to proceed in arbitration.    JA at 180 (¶ 2) and 182-83.    Ford Credit filed an arbitration with the AAA shortly thereafter and AAA administered the arbitration. JA at 177-79 (identifying Roland Cowden as the attorney for Defendant).    In the *Pank* case, Ford Credit filed the deficiency action in state court and during the pendency of litigation switched courses and requested the Court no longer oversee the action.    Rather, Ford Credit determined that it was in its best interest at that point to proceed in arbitration in front of AAA and filed the motion to compel arbitration even though it originally filed and began litigating the case in state court.    Just as Haywood argued Ford Credit could have done in her deficiency action pursuant to the terms of the Arbitration Clause contained in the RISC (JA 30), well after the filing of the deficiency action against the Panks, Ford Credit requested that the action filed in state court be sent to AAA for arbitration in accordance with an arbitration agreement.

Accordingly, there is no merit in Ford Credit's contention that AAA was unavailable to administer an arbitration between Haywood and Ford Credit. Rather, AAA plainly stated that it was available to administer an arbitration

28

between Ford Credit and Haywood.  Ford Credit simply failed to take the steps needed to initiate the administration of the arbitration.

> D.    The Prior Litigation Between Ford Credit and Haywood Involved Similar Facts and Legal Claims

This Court has held that prior litigation between the same parties should be considered in determining the extent a party invoked the judicial process if the prior litigation involved similar facts and legal claims.  *MicroStrategy*, 268 F.3d at 250 (finding that there was no default under the FAA where the party seeking arbitration previously initiated litigation on legally and factually *distinct* claims from those on which arbitration was sought) (*citing Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 133 (2d Cir. 1997) ("[O]nly prior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to arbitrate.")); *Barbagallo*, 2012 WL 6478956.  It is not merely the inclusion of the related claims but the activities related to the actual litigation on the related claims that is important.  *MicroStrategy*, 268 F.3d at 250.

The question of what is a related claim has been the subject of numerous judicial opinions.  For instance in *MicroStrategy*, this Court had before it a case in which the party requesting arbitration previously filed three separate actions in court against the party it was now attempting to force into arbitration.  In the first three actions filed, almost all of the litigation activities were directed toward unrelated claims compared to the claims it later sought to force into arbitration.

29

The Fourth Circuit held that because there was very little litigation between the same parties on the related claim and because the related claim was never resolved by a "decision on the merits" the related but unlitigated claim could be forced into arbitration. *Id.* at 250; *Barbagallo*, 2012 WL 6478956 (finding that the filing of a collection action on a RISC after a repossession was based on the same legal and factual issues disputed in a later filed action by the consumer). In addition, in *Grumhaus*, 223 F.3d 648, 652 (7th Cir. 2000), the Seventh Circuit described the issue as "whether the parties had 'litigate[d] substantial issues going to the merits of the [ ] current claims'" and held that prior litigation of conversion, unjust enrichment, and constructive fraud claims waives the right to arbitrate negligence, breach of duty, and securities law claims. This was the case because each claim arouse out of the same issue - "whether Comerica wrongfully liquidated the stocks." Similarly, all claims alleged in the current litigation raised by Haywood arose out of the same issue previously litigated in the collection action filed by Ford Credit that resulted in a judgment, an appeal, a trial and a second judgment - whether Ford Credit provided proper and adequate notice of the repossession sale in accordance with the RISC to Haywood. *Forrester v. Penn Lyon Homes, Inc.*, 553 F.3d 340, 344 (4th Cir. 2009) (finding that litigating "factually intertwined [claims]" caused actual prejudice).

30

Maryland appellate courts have determined that a consumer's claim for affirmative damages under the RISC or CLEC is simply a continuation of the same claim for a deficiency judgment after a repossession filed by a credit grantor to collect any remaining balance under the RISC. For instance, in *Moore v. Nissan Motor Acceptance Corp.*, 831 A.2d 12 (Md. 2003), litigation was originally filed by the credit grantor seeking a deficiency judgment after the repossession and sale of a motor vehicle from its customer. The customer defended the deficiency judgment action on the grounds that the credit grantor failed to provide adequate and proper notices of the repossession sale required by CLEC. A final judgment was entered disallowing any deficiency judgment because the court found that the credit grantor failed to provide proper and adequate notice of the repossession sale to its customer. The customer later filed an affirmative claim against the credit grantor solely based on the defense that was previously litigated (*i.e.* the failure of the credit grantor to provide adequate and proper statutorily required notice of the repossession sale) seeking affirmative damages. The credit grantor sought to dismiss the affirmative claim based on *res judicata*.[5] The Maryland Court of Appeals stated that where a consumer raised a "statutory defense; it was litigated,

---

[5] The Maryland Court of Appeals defined the issue presented as "whether a party, who (1) is sued as a defendant, (2) successfully raises a particular defense that defeats all or part of the plaintiff's claim, but (3) does not file a counterclaim seeking affirmative relief based on that defense, may, in a subsequent action, sue as a plaintiff on the basis of that defense." *Moore*, 831 A.2d 12.

and she prevailed" on that defense, the consumer may base a subsequent affirmative claim on the same facts and legal arguments raised in the original defensive debt action. In reaching this conclusion, the Maryland Court of Appeals adopted Restatement (Second) of Judgments § 22 comment d (1982) stating:

> Where the same facts constitute a defense to the plaintiff's claim and a ground for counterclaim, and the defendant sets up these facts as a defense but not as a counterclaim, and after litigation of the defense judgment is given for the defendant, the defendant is not precluded by the rule of merger from maintaining a subsequent action against the plaintiff based upon these facts . . . . In the subsequent action, the rules of issue preclusion . . . will apply to issues litigated and determined in the first action.

The Maryland Court of Appeals findings that the affirmative claim for damages based on the same facts asserted as a defense to the debt collection action grounded on a statutory violation of CLEC controls the analysis of the identical case before this Court. *See also Green v. Ford Motor Credit*, 828 A.2d 821 (Md. App. 2003) (holding that an affirmative claim of a consumer alleging that a credit grantor failed to provide proper and adequate statutorily required notices regarding a repossession sale under CLEC is barred by *res judicata* where the consumer fails to raise this defective notice as a defense in a deficiency judgment action and the deficiency judgment is granted to the credit grantor in part because the affirmative suit involves the same claim as could have been litigated in the deficiency action); *Rowland v. Harrison*, 577 A.2d 51 (Md. 1990) (holding that negligence claim not

litigated in a prior action was not the same claim as the collection action previously litigated); and *Singer v. Steven Kokes, Inc.*, 384 A.2d 463, 466 (Md. App. 1978) (holding that two actions were not different but the same where a defendant originally asserted a defense to a mechanics lien case based on a breach of warranty and then affirmatively brought suit for the same breach of warranty).

All of the issues presented in the collection litigation filed by Ford Credit against Haywood and all of the issues presented in the pending litigation filed by Haywood against Ford Credit arose out of the same transaction/RISC and include the same issue - the failure to provide proper and adequate repossession notices to Haywood in compliance with the RISC and CLEC.  The pending litigation and the claim actually litigated and determined in the collection litigation are identical legally because a deficiency judgment action requires a credit grantor to prove it complied with statutorily mandated notice requirements and an affirmative CLEC/breach of contract claim requires a consumer to prove only that the credit grantor did not provide the statutorily mandated notice requirements.  *Green*, 828 A.2d 821 (stating that a claim for a deficiency judgment requires proof by the credit grantor that there was an agreement between the parties providing for a deficiency judgment and compliance with the applicable statute).  The claim in the pending litigation and the claim actually litigated and brought to judgment in the collection litigation are identical factually because each complaint requires proof

of the exact same transaction and interactions between the parties. *See* discussions of elements of claims in *Moore*, 831 A.2d 12 and *Green*, 828 A.2d 821. For this reason, Ford Credit defaulted under the FAA by proceeding through judgment, appeal, trial and appellate judgment on the same issues presented in the pending litigation without ever demanding or attempting to initiate arbitration on this claim.[6]

## CONCLUSION

Ford Credit defaulted on its rights to enforce the Arbitration Clause because of its delay in demanding arbitration and Haywood has suffered actual prejudice as a result. For the reasons and arguments set forth herein, Appellant Haywood requests that this Court reverse the Order Granting Ford Credit's Motion to Compel Arbitration and remand this case to the USDC of Maryland for further proceedings.

Respectfully submitted this 17th day of February, 2016.

 /s/   **Cory L. Zajdel**
Cory L. Zajdel, Esq.
Z LAW, LLC
301 Main Street, Ste. 2-D
Reisterstown, Maryland 21136
clz@zlawmaryland.com
(443) 213-1977
**Attorney for Plaintiff-Appellant**

---

[6] The Fifth Circuit has held that where *res judicata* is applicable to a claim in the potentially arbitrable second filed claim, arbitration does not serve the purposes it was originally designed to serve and that leaving the second litigation in court is actually favorable to arbitration. *Miller Brewing Co. v. Fort Worth Distributing Co.*, 781 F.2d 494 (5th Cir. 1986).

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to FEDERAL RULE OF APPELLATE PROCEDURE 34, Appellant respectfully requests oral argument. This case presents an important issue under the *Federal Arbitration Act* - whether there is ever any point in time that is too late to demand arbitration under an arbitration agreement. More specifically, whether a creditor defaults on its right to seek relief under a RISC containing an arbitration clause pursuant to the *Federal Arbitration Act*, 9 U.S.C. § 3 by waiting until after two judgments were entered - including a trial court judgment in its favor and an adverse appellate court judgment after fully participating in a trial on the merits - prior to requesting arbitration under the same retail installment sales contract for the same claim. This Court has previously analyzed cases in which there was significant trial-oriented activities but never addressed a situation in which the party requesting arbitration actually participated in a trial on the merits that was brought through to a final judgment. This is an important issue that is worthy of argument.

The question at issue in this case is complex and involves the interpretation of significant federal legislation - default in demanding arbitration under the FAA. In light of the far-reaching implications of this issue, Appellant respectfully requests the opportunity to present oral argument in this matter.

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of FED. R. APP. P. 28.1(e)(2) or 32(a)(7)(B) because this brief contains 8,017 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using *Microsoft Office Word 2007* in *14pt Times New Roman*.

Dated: February 17, 2016        **/s/   Cory L. Zajdel**
                                 *Counsel for Plaintiff-Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 17th day of February, 2016, I caused this Opening Brief of Appellant and the Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Scott E. Peters, Esq.
Thieblot Ryan P.A.
810 Glen Eagles Court, Suite 312
Baltimore, MD 21286
speters@trm-h.com
(410) 837-1140

Thomas M. Byrne, Esq.
Valerie S. Sanders, Esq.
Sutherland Asbill & Brennan LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, Georgia 30309-3996
tom.byrne@sutherland.com
valerie.sanders@sutherland.com
(404) 853-8000

**Attorneys for Defendant-Appellee Ford Motor Credit Company, LLC**

I further certify that on the 17th day of February, 2016, I will cause the required number of bound copies of the foregoing Opening Brief of Appellant and Joint Appendix to be placed in the mail via USPS Priority Mail to be filed with the Clerk of this Court and to all case participants, at the above listed addresses.

 /s/   Cory L. Zajdel
*Counsel for Plaintiff-Appellant*

37